## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

END PRODUCT RESULTS, LLC, and
BEAK & BUMPTER, LLC

       Plaintiffs,                              Case No. 12-11546

v.                                              Hon. Lawrence P. Zatkoff

DELTA USA, INC.,

       Defendant.
_____/

### OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on June 5, 2012.

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction [dkt 13]. Plaintiffs filed their motion on May 3, 2012. As of the date of this Opinion and Order, Defendant has failed to file a response and the time do so has expired. E.D. Mich. L. R. 7.1(e). The Court, nonetheless, finds that the facts and legal arguments pertinent to the motion are adequately presented in Plaintiffs' motion and brief, and the decision process will not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L. R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the brief submitted. For the reasons set forth below, Plaintiffs' Motion for a Preliminary Injunction is GRANTED.

## II. BACKGROUND

Plaintiffs End Product Results, d/b/a Golden Dental Solutions, ("End Products") and Beak & Bumper, LLC ("Beak and Bumper") filed this action on April 5, 2012, seeking relief under the Lanham Act for Defendant's alleged intentional trademark infringement.  Plaintiffs have sold and continue to sell a two-handed dental instrument (similar to a pair of pliers) used by a dentist to extract teeth under the registered trademark "Physics Forceps." Plaintiffs also market the procedure used to extract teeth with the instrument under the "Beak & Bumper" registered trademark.  Plaintiffs have used the "Physics Forceps" and the "Beak & Bumper" marks ("the Registered Marks") in commerce since 2007 and 2010, respectively.[1]

Plaintiffs allege that Defendant is selling a competing dental instrument identified as the Misch Power Elevators.  According to Plaintiffs, Defendant uses the trademark "Physics Forceps" to pass off its Misch Power Elevators as Plaintiffs' instrument.  Plaintiffs further allege that Defendant lists "Physics Forceps" as a product on its website, uses the similar phrase "Beak & Fulcrum" on its website to confuse customers that Defendant's instrument is related to Plaintiff' "Beak & Bump" procedure, displays brochures of Plaintiffs' "Physics Forceps" instrument next to Defendant's Misch Power Elevators at trade shows, and displays Plaintiffs' actual instrument bearing the "Physics Forceps" mark at Defendant's trade booth show.  Based on these allegations, Plaintiffs assert four claims against Defendant: (Count I) trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (Count II) false designations of origin under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (Count III) common law trademark infringement;

---

[1]  Beak and Bumper own U.S. trademark registration nos. 3,341,070 and 3,887,729 for the trademarks "Physics Forceps" and "Beak & Bumper," respectively.  End Products is Beak and Bumper's exclusive trademark licensee of the Registered Marks.

and (Count IV) common law unfair competition.  Plaintiffs filed the instant motion seeking to enjoin

Defendant from further use of the Registered Marks and Defendant's similar "Beak & Fulcrum"

mark during the pendency of this matter.  Defendant has not responded to Plaintiffs' motion.

## III. LEGAL STANDARD

A court is to consider the following four factors in determining whether a plaintiff is entitled

to preliminary injunctive relief:

    (1)    whether the movant has shown a strong or substantial likelihood or probability of success on the merits;

    (2)    whether the movant has shown that he or she would suffer irreparable harm if the preliminary relief is not issued;

    (3)    whether the issuance of a preliminary injunction will not cause substantial harm to third parties; and

    (4)    whether the public interest would be served by the issuance of a preliminary injunction.

*Sandison v. Mich. High Sch. Athletic Ass'n, Inc.*, 64 F.3d 1026, 1030 (6th Cir. 1995); *UASCO Coal*

*Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98 (6th Cir. 1982); *Mason Cnty. Med. Ass'n v. Knebel*,

563 F.2d 256, 261 (6th Cir. 1977).  The standard for preliminary injunction is not a rigid and

comprehensive test, and the four factors are to be balanced, not prerequisites that must be satisfied,

but instead "these factors simply guide the discretion of the court; they are not meant to be rigid and

unbending requirements."  *In re Eagle-Picher Indus., Inc.*, 963 F.2d 855, 859 (6th Cir. 1992).

Accordingly, a party "is not required to prove his case in full at a preliminary injunction hearing and

the findings of fact and conclusions of law made by a court granting the preliminary injunction are

not binding at trial on the merits."  *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

# IV. ANALYSIS

## A. LIKELIHOOD OF SUCCESS ON THE MERITS

Under the first factor, a plaintiff must establish the likelihood of success on the merits by showing "more than a mere possibility of success." *Six Clinics Holding Corp. v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997) (citing *Mason County Med. Ass'n v. Knebel*, 563 F.2d 256, 261 n.4 (6th Cir. 1977)). "[I]t is ordinarily sufficient if the plaintiff has raised questions going to the merits so serious, substantial, difficult, and doubtful as to make them a fair ground for litigation and thus for more deliberate investigation." *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 543 (6th Cir. Mich. 2007) (citations omitted).

In establishing the first factor, Plaintiffs' Counts I and II assert infringement and false designation of origin against Defendant under 15 U.S.C. §§ 1114 and 1125(a). Under 15 U.S.C. § 1114, a person may not use another person's mark without consent in commerce when such use is *likely to cause confusion* to the consumers. 15 U.S.C. § 1114. Pursuant to 15 U.S.C. § 1125(a), a person may not use a term, name, or symbol in connection with any goods or services that is *likely to cause confusion* as to the connection of such person with another person. 15 U.S.C. § 1125(a). As such, the Court will address whether Plaintiffs have a substantial likelihood of success on the merits that Defendant's use of Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark is likely to cause confusion.

Plaintiffs must be able to show:

    1. the marks are valid and owned by Plaintiffs;

    2. that Defendant is using the same or similar marks; and

    3. the use of the marks by Defendant is likely to cause confusion.

*Star Fin. Servs., Inc. v. Aastar Mortg. Corp.*, 89 F.3d 5, 9 (1st Cir. 1996).

### 1. Plaintiffs Own Valid Marks

The first issue that must be addressed is whether the Registered Marks are valid and owned by Plaintiffs.  Based on a review of Plaintiffs' submissions to the Court, the Registered Marks are valid and Plaintiffs have used the Registered Marks in commerce prior to Defendant's use.  Having failed to file a response, Defendant provides no contary evidence, such as a license, indicating it has any right to use the Registered Marks.  Accordingly, the Court finds for purposes of the instant motion that Plaintiffs are the owners of the Registered Marks and Defendant does not have permission to use the Registered Marks.

### 2. Likelihood of Confusion Due to Use of Similar Marks

The remaining two elements that Plaintiffs must establish are whether Defendant is using the same or similar mark and whether there is a likelihood of confusion from such use.  The Court analyzes these two elements under the factors set forth in *Frisch's Restaurant, Inc. v. Shoney's Inc.*, 759 F.2d 1261, 1266 (6th Cir. 1985).  A court must examine and weigh the following eight factors:

1. strength of the senior mark;

2. relatedness of the goods or services;

3. similarity of the marks;

4. evidence of actual confusion;

5. marketing channels used;

6. likely degree of purchaser care;

7. the intent of defendant in selecting the mark; and

8. likelihood of expansion of the product lines.

*Id.* These factors are interrelated and merely serve as a guide to determine the likelihood of confusion. *Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1107 (6th Cir. 1991). While not all of the factors are relevant in every case, "[t]he ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Therma-Scan, Inc. v. Thermoscan, Inc.*, 295 F.3d 623, 630 (6th Cir. 2002) (citation omitted). Whether confusion exists "is a mixed question of fact and law," but the ultimate determination of whether a given set of foundational facts establishes a likelihood of confusion is a legal conclusion. *Id.* at 630–31.

Under the first factor, the Court finds that there is a substantial likelihood that the Registered Marks are strong marks. This strength is based on the Registered Marks' "distinctiveness and degree of recognition in the marketplace." *Homeowners*, 931 F.2d at 1107. "A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source.' " *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Ctr.*, 109 F.3d 275, 280 (6th Cir. 1997) (internal quotations and citations omitted). Customers' recognition of the mark can be shown "when the mark is unique, when it has received intensive advertisement, or both." *Id.* The Registered Marks are unique and distinct as they use words not generally associated with dental instruments to identify Plaintiffs' dental instrument and the procedure for which it is used. The association of the Registered Marks with Plaintiffs' dental instrument has been the result of marketing on behalf of Plaintiffs, resulting in widespread marketplace recognition. *See Autozone, Inc. v. Tandy Corp.*, 373 F.3d 786, 794 (6th Cir. 2004). Such recognition includes an appearance on The Doctors TV Show, use of the instrument with the Registered Marks in clinical articles and studies, and widespread notoriety among dentists as exhibited by multiple testimonials of those who use the

6

instrument.

Second, both parties appear to sell and market competing dental instruments used to extract teeth. Because the parties compete directly and Defendant is using Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark to sell its dental instruments, the goods are closely related under *Frisch*. *Kellogg Co. v. Toucan Golf, Inc.*, 337 F.3d 616, 624 (6th Cir. 2003); *see Daddy's Junky Music Stores Inc.*, 109 F.3d at 282. Likewise, under the third factor, the marks are similar. Defendant is using Plaintiffs' "Physics Forceps" mark and thus, there is no question that the parties' use of this mark is the same. *See Champions Golf Club, Inc. v. the Champions Golf Club, Inc.*, 78 F.3d 1111, 1119 (6th Cir. 1996). Furthermore, Defendant's use of the mark "Beak & Fulcrum" to describe its dental instrument is similar to Plaintiffs' use of the mark "Beak & Bumper."

As to the fourth factor, Plaintiffs provide no evidence of actual confusion, merely citing to sales of Defendant's Misch Power Elevators on the internet by using Plaintiffs' "Physic Forceps" mark and the similar "Beak & Fulcrum" mark. While presumably the buyer of the product may have been confused by believing he or she was buying Plaintiffs' instrument, yet actually receiving Defendant's instrument, Plaintiffs have provided no proof that consumers were actually confused. Evidence of actual confusion, however, is not necessary. *Wynn Oil Co. v. Thomas*, 839 F.2d 1183, 1188 (6th Cir. 1988).

Turning to the fifth factor, the parties use similar marketing channels. Similar to Plaintiffs selling their instruments online under the Register Marks, Defendant is selling its instrument on its website using Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" marks. Defendant is also selling its product under these marks at trade shows, some of which Plaintiffs also

attend.

While Plaintiffs have presented no evidence of the purchaser care in the dental instrument market, courts use the standard of a typical buyer exercising ordinary caution. *Homeowners*, 931 F.2d at 1111. "A higher degree of care, in contrast, is appropriate where the buyer in question has a particular expertise or sophistication, or is making an expensive or unusual purchase." *Therma-Scan, Inc.*, 295 F.3d at 638. Even assuming that a high degree of care is exercised by dental instrument buyers based on their expertise and specialization, the most sophisticated purchasers would be confused because Defendant is using Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark in conjunction with its instrument. The appearance of Defendant's instrument is highly similar—if not an imitation as Plaintiffs assert—to Plaintiffs' instrument. A sophisticated buyer has no means to discern whether the instrument is being purchased from Defendant or Plaintiffs, thus contributing to a likelihood of confusion.

With respect to the seventh and eighth factors, Plaintiffs have not submitted evidence to indicate that Defendant has willful intent in using Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark to divert business from Plaintiffs. Based on the evidence attached to the brief, however, the Court finds it likely that such intent may be discovered as this matter proceeds forward. *See Therma-Scan, Inc.*, 295 at 638–39 ("Circumstantial evidence of copying, particularly 'the use of a contested mark with knowledge of the protected mark at issue,' is sufficient to support an inference of intentional infringement where direct evidence is not available.") (citations omitted)). Plaintiffs also assert that they are constantly developing new instruments and thus expanding their product line.

Accordingly, after weighing and balancing the *Frisch* factors, Plaintiffs have at least a

likelihood of success on two of their counts (Counts I and II), which is sufficient to satisfy this factor. The Court need not address Plaintiffs' possibility of success on Counts III and IV (common law trademark infringement and unfair competition) at this juncture.

### B. IRREPARABLE INJURY

The Court next considers whether Plaintiffs will suffer irreparable injury without the injunction. *Certified Restoration Dry Cleaning*, 511 F.3d at 550. A plaintiff's harm is irreparable if "it is not fully compensable by monetary damages." *Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d 566, 578 (6th Cir. 2002); *see Basicomputer Corp. v. Scott*, 973 F.2d 507, 511–12 (6th Cir. 1992) ("The loss of customer goodwill often amounts to irreparable injury because the damages flowing from such losses are difficult to compute.").

Here, the Court finds that the harm Plaintiffs would incur is irreparable harm, as Defendant's continued use of Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark in conjunction with the sale of Defendant's instruments could cause a loss in sales to Plaintiffs that is difficult to compute. Moreover, a customer dissatisfied with Defendant may choose not to do business with Plaintiffs based on the assumption that they are the same company and Defendant and the parties' instruments are the same. Thus, this factor weighs in favor of Plaintiffs.

### C. SUBSTANTIAL HARM TO OTHERS

The Court must also consider "whether the issuance of the injunction would cause *substantial* harm to others." *Tumblebus Inc. v. Cranmer*, 399 F.3d 754, 760 (6th Cir. 2005). Plaintiffs contend there *is minimum* harm to others. The Court agrees. Based upon the record before the Court, this factor also weighs in favor of Plaintiffs.

### D. PUBLIC INTEREST

"The public interest is served by protecting one's trademark rights and avoiding confusion in the marketplace." *Midwest Guaranty Bank v. Guaranty Bank*, 270 F. Supp. 2d 900, 924 (E.D. Mich. 2003). Having determined that Plaintiffs have rights in the Registered Marks and that Defendant's use of Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark is likely to cause confusion in the marketplace, the Court finds that the public interest is best served by the issuance of an injunction.

### E. BOND REQUIREMENT

Federal Rule of Civil Procedure 65(c) states, in relevant part:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c). While the plain language of Rule 65(c) mandates that the district court require security before issuing a preliminary injunction, the Sixth Circuit has left the decision of whether to require security within the sound discretion of the district court. *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir.1995) ("While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."). Based on the record and evidence reviewed by the Court—including Defendant's failure to challenge Plaintiffs' request for injunctive relief—the Court concludes that no bond is appropriate in this case.

### V. CONCLUSION

10

Accordingly, for the reasons set forth above, IT IS HEREBY ORDERED that Plaintiffs'
Motion for a Preliminary Injunction [dkt 13] is GRANTED.  Pending a subsequent order by this
Court or a final trial on the merits, the Court hereby ORDERS that Defendant is:

1.      enjoined and restrained, including its officers, agents, servants, employees, attorneys,
        successors and assigns, and all persons or entities acting in concert or participation
        with them, from using (a) the trademarks "Physic Forceps" and "Beak & Bumper"
        and (b) any other false designation of origin or representation likely to cause
        confusion in the mind of a consumer or to deceive the public into believing that
        Defendant or its products are related to Plaintiffs or their products; and

2.      required to file with the Court and serve on Plaintiffs' counsel, within thirty (30)
        days after entry of this Opinion and Order, a sworn written statement under oath
        setting forth in detail the manner and form in which Defendant has complied with
        this Opinion and Order as provided in 15 U.S.C. § 1116(a).

IT IS SO ORDERED.

                                s/Lawrence P. Zatkoff
                                LAWRENCE P. ZATKOFF
                                UNITED STATES DISTRICT JUDGE

Dated:  June 5, 2012

                        CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record
by electronic or U.S. mail on June 5, 2012.

                                s/Marie E. Verlinde
                                Case Manager
                                (810) 984-3290

11