# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

END PRODUCT RESULTS, LLC, a Michigan
Limited Liability Company, d/b/a Golden Dental
Solutions, and BEAK & BUMPER, LLC, a
Michigan Limited Liability Company,

       Case No. 12-11546
       Hon. Lawrence P. Zatkoff

    Plaintiffs,

v.

DENTAL USA, INC., an Illinois Corporation,

    Defendant.
_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on March 6, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on Defendant's Motion to Vacate or Alternatively to Modify the Preliminary Injunction [dkt 108], Plaintiffs' Motion for Leave to File Second Amended Complaint [dkt 119], and Plaintiffs' Third Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt [dkt 120]. The motions have been fully briefed. The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the briefs submitted. For the following reasons, Defendant's motion to vacate or modify is DENIED, Plaintiffs' motion for leave is GRANTED IN PART and DENIED in part, and Plaintiffs' motion to show cause is DENIED.

## II. BACKGROUND

### A. FACTUAL BACKGROUND

The facts of this case were sufficiently depicted in the Court's June 5, 2012, Opinion and Order, as follows:

> Plaintiffs End Product Results, d/b/a Golden Dental Solutions, ("End Products") and Beak & Bumper, LLC ("Beak and Bumper") filed this action on April 5, 2012, seeking relief under the Lanham Act for Defendant's alleged intentional trademark infringement. Plaintiffs have sold and continue to sell a two-handed dental instrument (similar to a pair of pliers) used by a dentist to extract teeth under the registered trademark "Physics Forceps." Plaintiffs also market the procedure used to extract teeth with the instrument under the "Beak & Bumper" registered trademark. Plaintiffs have used the "Physics Forceps" and the "Beak & Bumper" marks ("the Registered Marks") in commerce since 2007 and 2010, respectively [footnote omitted].
>
> Plaintiffs allege that Defendant is selling a competing dental instrument identified as the Misch Power Elevators. According to Plaintiffs, Defendant uses the trademark "Physics Forceps" to pass off its Misch Power Elevators as Plaintiffs' instrument. Plaintiffs further allege that Defendant lists "Physics Forceps" as a product on its website, uses the similar phrase "Beak & Fulcrum" on its website to confuse customers that Defendant's instrument is related to Plaintiffs' "Beak & Bump" procedure, displays brochures of Plaintiffs' "Physics Forceps" instrument next to Defendant's Misch Power Elevators at trade shows, and displays Plaintiffs' actual instrument bearing the "Physics Forceps" mark at Defendant's trade [show booths].
>
> Based on these allegations, Plaintiffs assert four claims against Defendant: (Count I) trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (Count II) false designations of origin under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (Count III) common law trademark infringement; and (Count IV) common law unfair competition.

### B. PROCEDURAL BACKGROUND

In the early stages of this litigation, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendant from further use of the Registered Marks and Defendant's similar "Beak & Fulcrum" mark during the pendency of this matter. On June 5, 2012, the Court granted Plaintiffs' preliminary

injunction motion after finding that Defendant's use of Plaintiffs' "Physics Forceps" mark and the "Beak & Fulcrum" mark (similar to Plaintiffs' "Beak & Bumper" mark) was likely to cause consumer confusion. The Preliminary Injunction stated that Defendant is:

> (1) enjoined and restrained, including its officers, agents, servants, employees, attorneys, successors and assigns, and all persons or entities acting in concert or participation with them, from using (a) the trademarks "Physic Forceps" and "Beak & Bumper" and (b) any other false designation of origin or representation likely to cause confusion in the mind of a consumer or to deceive the public into believing that Defendant or its products are related to Plaintiffs or their products; and
>
> (2) required to file with the Court and serve on Plaintiffs' counsel, within thirty (30) days after entry of this Opinion and Order, a sworn written statement under oath setting forth in detail the manner and form in which Defendant has complied with this Opinion and Order as provided in 15 U.S.C. § 1116(a).

Based on Defendant's alleged non-compliance with the Preliminary Injunction, Plaintiffs filed a motion for an order compelling Defendant to show cause why Defendant should not be held in contempt of Court. In their motion Plaintiffs presented evidence that Defendant continued to display and advertise with language that violated the Preliminary Injunction, specifically directing the Court's attention to Defendant's use of the phrase "The Next Generation of Beak And Fulcrum Instruments." Finding that this phrase was "already precluded from use at the time the Preliminary Injunction went into effect," the Court found Defendant in contempt for failing to comply with the Preliminary Injunction and ordered Defendant, among other things, to:

> (1) immediately remove and stop use of "Beak & Fulcrum", and the phrase "The Next Generation of Beak And Fulcrum Instruments" (or any derivative of it) from all of Defendant's advertisements, promotional and/or marketing, and materials (including those in electronic form); and
>
> (2) issue a written letter to its distributors and/or salesmen instructing them not to advertise the Misch Power Elevators as "The Next Generation of Beak And Fulcrum Instruments" and/or use Plaintiffs' trademarks in any advertising.

Presently pending before the Court are: (1) Defendant's motion to vacate/modify the Preliminary Injunction; (2) Plaintiffs' motion for leave to file a second amended complaint; and (3) Plaintiffs' third motion for an order to show cause as to why Defendant should not be held in contempt. Each motion will be addressed in turn below.

### III. LEGAL STANDARDS

#### A. DISSOLUTION OF PRELIMINARY INJUNCTION

"The power to modify or dissolve injunctions springs from the court's authority 'to relieve inequities that arise after the original order.'" *Gooch v. Life Investors Ins. Co. of America*, 672 F.3d 402, 414 (6th Cir. 2012) (quoting *Credit Suisse First Bos. Corp. v. Grunwald*, 400 F.3d 1119, 1124 (9th Cir. 2005)). Where "significant changes in the law or circumstances" threaten to convert a previously proper injunction "into an 'instrument of wrong,'" the law recognizes that judicial intervention may be necessary to prevent inequities. *Salazar v. Buono*, 559 U.S. 700, 714–15 (2010) (plurality opinion) (quoting 11A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2961 (2d ed. 1996) (hereinafter Wright & Miller)).

"However, such judicial intervention is guarded carefully: To obtain modification or dissolution of an injunction, a movant must demonstrate significant 'changes in fact, law, or circumstance since the previous ruling.'" *Gooch*, 672 F.3d at 414 (citations omitted). *See also Int'l Union, UAW v. Baretz*, Nos. 97–1763, 97–1936, 1998 WL 449688, at *2 (6th Cir. July 22, 1998) ("On a motion to dissolve a preliminary injunction, the issue before the district court is whether the movant has shown that changed circumstances warrant discontinuation of the preliminary relief." (citation omitted)). "[N]ewly discovered evidence can be the basis for a motion to modify," 11A Wright & Miller, § 2961, nevertheless, the law of this Circuit is clear that to so qualify, the new evidence must not have been "in existence before the original" injunction was issued, *Denley v. Shearson/Am. Express, Inc.*, 733 F.2d 39,

4

43 (6th Cir. 1984), *superseded by statute on other grounds as recognized in Arnold v. Arnold Corp.– Printed Commc'ns for Bus.*, 920 F.2d 1269, 1275 n. 5 (6th Cir. 1990).

**B. MOTION TO AMEND**

Pursuant to Fed. R. Civ. P. 15(a)(2), leave to amend shall be "freely give[n] . . . when justice so requires," but "that window of opportunity does not remain open forever." *Shane v. Bunzl Distribution USA, Inc.*, 275 F. App'x 535, 536 (6th Cir. 2008). "A motion to amend a complaint should be denied if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane*, 53 F.3d 750, 753 (6th Cir. 1995) (*citing Ford v. Ford*, 371 U.S. 187 (1962)). When a party seeks to amend its complaint at a late stage of the litigation, "there is an increased burden to show justification for failing to move earlier." *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 459 (6th Cir. 2001) (citing *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

## IV. ANALYSIS

**A. DISSOLUTION OF PRELIMINARY INJUNCTION**

Defendant argues the following "newly available evidence" requires the Court to dissolve or modify the Preliminary Injunction currently in place: (1) the recently issued trademark registration for "The Next Generation of Beak and Fulcrum Instruments"; (2) Plaintiffs' attempts, as "junior user," to usurp Defendant's newly issued mark for their (Plaintiffs') own use; (3) Plaintiffs' recent generic use of the phrase "beak and fulcrum instrumentation"; and (4) Defendant's lawful acquisition of used Physics Forceps instruments which it wishes to resell. All of these circumstances, Defendant contends, demonstrate that Plaintiffs now have a decreased—"if not substantially low"—likelihood of success on the merits; that Plaintiffs cannot show irreparable harm; and that third-party or public interests "are no better served by maintaining the [Preliminary Injunction] than by dissolving or amending it[.]"

**i. Defendant's "New" Evidence**

a. <u>Registered Trademark</u>

Defendant submits evidence that the United States Patent and Trademark Office ("USPTO") issued U.S. Trademark Registration 4,301,312 to Defendant on March 13, 2013, for "The Next Generation of Beak and Fulcrum Instruments" in the field of "[d]ental instruments [used for] elevating the roots of a tooth during tooth extraction." Because the USPTO had not issued the registered trademark until after issuance of the Preliminary Injunction in this case, Defendant first argues evidence of its existence (*i.e.*, the mark) was not available when the Court considered Plaintiffs' motion for a preliminary injunction. That much the Court agrees with.

Defendant then continues its argument by stating the USPTO's review—and issuance—of the mark "inherently means that the [USPTO] . . . determined that Defendant's mark does not cause a likelihood of confusion with any registered marks, including Plaintiffs' 'Beak and Bumper' mark." And, according to Defendant, this Court should afford the USPTO's review deference. This is where Defendant's position loses its legal bite.

Most troublesome with Defendant's theory is its initial—and continued—lack of transparency during the trademark application process. Submission of the application required Defendant to prove "use" of the mark and to certify that "no other person, firm, corporation, or association has the right to use the mark in commerce, either in the identical form thereof or in such near resemblance thereto as to be likely . . . to cause confusion, or to cause mistake . . . ." Yet, when Defendant filed the application with the USPTO on July 23, 2012, it was undoubtedly aware of the June 5, 2012, Preliminary Injunction that enjoined Defendant from *using* Plaintiffs' "trademarks 'Physic Forceps' and 'Beak & Bumper' *and* any other false designation of origin or representation *likely to cause confusion in the mind of a consumer* or to deceive the public into believing that Defendant or its products are related to Plaintiffs or their

6

products." As the Court made clear in its August 29, 2012, Order, Defendant was already prohibited from using the phrase "The Next Generation of Beak And Fulcrum Instruments" as of the date the Preliminary Injunction went into effect (June 5, 2012). Even if Defendant was unclear as to what it was prohibited from using when filing the trademark application, any such confusion was dispelled on August 29, 2012—more than six months before its mark was registered by the USPTO. At no time did Defendant withdraw or amend its application. Based on Defendant's initial decision to trademark the phrase and failure to inform the USPTO of the Court's orders throughout the process, the Court finds Defendant's conduct disconcerting and further questions whether or not the USPTO would have ultimately granted a registered trademark to Defendant.

Moreover, despite Defendant's assertions, the Court is under no duty to afford controlling deference to the USPTO. To be sure, Congress was direct in its drafting of the Lanham Act: federal courts have vested power to "determine the right to registration, order the cancelation of registrations, in whole or in part, restore canceled registrations, and otherwise rectify the register with respect to the registrations of any party to the action." 15 U.S.C. § 1119. Thus, a certificate of trademark registration issued by the USPTO is subject to limited deference, as it must be received into evidence but only serves as "prima facie evidence of the validity of the registered mark." *See* 15 U.S.C. §§ 1057(b), 1115(a). *See also America Online, Inc. v. AT&T Corp*, 243 F.3d 812, 817 (4th Cir. 2001) ("In none of these provisions conferring on federal courts the power to adjudicate rights under the Lanham Act does Congress instruct the courts to review registration decisions of the [USPTO] under a deferential standard.") So, while the registration of Defendant's mark by the USPTO may offer "evidence" to this Court that Defendant and Plaintiffs' marks are not confusingly similar, the USPTO's finding is not dispositive here. This conclusion is further bolstered by the fact that it appears Defendant did not submit to the USPTO the Court's Preliminary Injunction or Contempt orders, thus depriving the USPTO consideration of a

7

complete record. These orders could have impacted the USPTO's decision to register Defendant's mark. *See CytoSport, Inc. v. Vital Pharmaceuticals, Inc.*, 617 F. Supp. 2d 1051, 1068 (E.D. Cal. 2009) ("Moreover, the fact that the [US]PTO did not find the two marks confusingly similar is not dispositive. The [US]PTO makes its determination based upon the mark as it is presented for registration, regardless of how the mark may be used in the marketplace.").

In brief, the Court fails to find that Defendant's evidence of the registered mark casts doubt on Plaintiffs' likelihood of success on the merits of its federal trademark claims.

b. Junior User

Defendant next argues that Plaintiffs are usurping "The Next Generation of Beak And Fulcrum Instruments" mark for their (Plaintiffs') own benefit. Specifically, Defendant alleges that Plaintiffs "started using the mark 'The Next Generation of Physics Forceps'" only after the Preliminary Injunction was in place. In other words, Defendant claims Plaintiffs are using "this Court's injunctive powers to elevate themselves as the junior user" of Defendant's registered mark. Plaintiffs disputes these allegations, instead asserting that they "very recently" developed a new version of the Physics Forceps and are "rightfully advertising" the new product as "The Next Generation of Physics Forceps."

The Court finds Defendant's argument of no consequence here. There is simply no evidence demonstrating that, as Defendant claims, Plaintiff is vindictively using the "Court's injunctive powers" in an abusive—let alone illegal—manner. More to the point, because the Court has serious questions regarding Defendant's choice to pursue trademark registration of a mark that it was expressly prohibited from using, any attempt by Defendant to argue that Plaintiffs are the "junior user" of its (Defendant's) recently attained mark is likewise questionable.

c. <u>Generic Use</u>

Defendant submits that Plaintiffs have generically used the phrase "beak and fulcrum" to refer to the class of dental instruments that includes Plaintiffs' Physics Forceps and Defendant's Power Elevators. As evidence of Plaintiffs' generic use, Defendant cites to a previously filed document in this case by Plaintiffs. This "exemplary generic use," Defendant contends, is newly available evidence that necessitates reconsideration of the Preliminary Injunction.

Defendant's third argument is far from a model of clarity. First, Defendant's "evidence" of Plaintiffs' generic use—a one sentence assertion issued by Plaintiffs in a prior document—is taken out of context. In any event, Defendant wholly fails to explain how or why such alleged "generic use" of the phrase "beak and fulcrum" would require the Court to vacate or modify the Preliminary Injunction. The Court is not in the business of crafting arguments on behalf of litigants. As such, the Court rejects Defendant's allegations on the generic use issue.

d. <u>Selling Physics Forceps/Trade-In Program</u>

Defendant lastly argues that, since imposition of the Preliminary Injunction, it has "been approached by former and present users of the Physics Forceps" who request that Defendant buy the used Physics Forceps from them as a way to "reduce the cost" of switching to Defendant's product, the Power Elevators. These propositions allow Defendant two options: (1) accept the Physics Forceps as a "trade-in" and thereby allow the customers to use the purchase price towards a Power Elevator instrument; and (2) take the Physics Forceps that were traded in, re-tip them, and sell them as used products. In response, Plaintiffs label Defendant's allegations as "untrue" and attacks its failure to produce any evidence—via invoice or otherwise—of former and present Physics Forceps users "trading-in" those instruments. Rather, Plaintiffs theorize that Defendants are "attempting to sell rejected Physics Forceps from a time period when [D]efendant attempted to manufacture Physics Forceps."

9

The Court is unconvinced by either argument, however, as both parties fail to offer *any* credible evidence in support their respective positions. Without any such evidence, both parties' self-serving allegations amount to nothing more than mere speculation. Accordingly, the Court considers both parties' arguments on this issue irrelevant for purposes of deciding Defendant's instant dissolution motion.

After considering the substance of Defendant's "new" evidence, the Court concludes Defendant has failed to demonstrate that Plaintiffs have a "substantially low" likelihood of success on the merits of their claims.

### ii. Irreparable Harm; Third-Party And Public Interests

As to irreparable harm, the Sixth Circuit "requires no particular finding of its likelihood to support injunctive relief in case of this type, for irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears from infringement . . . ." *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 381–82 (6th Cir. 2006) (citations and quotation marks omitted). In its June 5, 2012, Opinion and Order granting the Preliminary Injunction, the Court found

> the harm Plaintiffs would incur is irreparable harm, as Defendant's continued use of Plaintiffs' "Physics Forceps" mark and the similar "Beak & Fulcrum" mark in conjunction with the sale of Defendant's instruments could cause a loss in sales to Plaintiffs that is difficult to compute. Moreover, a customer dissatisfied with Defendant may choose not to do business with Plaintiffs based on the assumption that they are the same company and Defendant and the parties' instruments are the same. Thus, this factor weighs in favor of Plaintiffs.

The Court sees no reason to disturb its previous reasoning and Defendant's attempt to escape that conclusion is unconvincing. Defendant contends that "[a]ny irreparable harm to [P]laintiffs resulting from lost sales is mirror by the irreparable harm to [D]efendant from maintaining the injunction." Yet, Defendant's averment is misguided, as the irreparable harm factor for preliminary injunctions considers whether the *movant* suffers such harm. *McPherson v. Mich. High School Athletic Ass'n, Inc.*, 119 F.3d

10

453, 459 (6th Cir. 1997). The non-moving party's harm is only analyzed when the moving party seeks permanent injunctive relief. *eBay, Inc. v. MercExchange*, 547 U.S. 388, 391 (2006). As such, the irreparable harm factor still tilts in Plaintiffs' favor.

Further, Defendant's proffer of "new" evidence does not change the Court's prior consideration and analysis of the substantial harm to others or the public interest factors. In the end, the Court concludes Defendant has failed to identify significant changes in law or fact that requires dissolution or modification of the Preliminary Injunction currently in place.

### iii. Bond Requirement

Federal Rule of Civil Procedure 65(c) states, in relevant part:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained. The United States, its officers, and its agencies are not required to give security.

Fed. R. Civ. P. 65(c). While the plain language of Rule 65(c) mandates that the district court require security before issuing a preliminary injunction, the Sixth Circuit has left the decision of whether to require security within the sound discretion of the district court. *Moltan Co. v. Eagle–Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) ("While we recognize that the language of Rule 65(c) appears to be mandatory, and that many circuits have so interpreted it, the rule in our circuit has long been that the district court possesses discretion over whether to require the posting of security."). For all the reasons contained in this Opinion and the June 5, 2012, Opinion and Order granting the issuance of the Preliminary Injunction, the Court determines posting of a bond remains inappropriate in this case.

### B. MOTION TO AMEND

Plaintiffs seek leave to amend their complaint to add additional allegations of trademark infringement, a new count for cybersquatting and a new count to cancel Defendant's recently obtained trademark, "The Next Generation of Beak And Fulcrum Instruments," described above. Plaintiffs argue

11

there is no evidence of bad faith, dilatory conduct or undue delay in bringing this motion; rather, Plaintiffs assert they only recently became apprised of these claims.

After thorough review of the parties' briefs, the Court will grant Plaintiffs leave to amend their complaint to add only one count contained in their proposed second amended complaint—Cancellation of U.S. Registration No. 4,301,312 (proposed Count V). Allowing the amendment to add Plaintiffs' trademark cancellation claim will not cause Defendant to suffer substantial prejudice, *see Brooks v. Celeste*, 39 F.3d 125, 130 (6th Cir. 1994), as the parties have engaged in discovery over Defendant's use of "The Next Generation of Beak And Fulcrum Instruments" since the genesis of this case. Moreover, to dispel any of Defendant's concerns over the requirement of "additional discovery," the Court will permit the parties 30 days from entry of this Opinion and Order to engage in additional discovery solely on this issue.

Regarding the additional allegations of trademark infringement and the proposed cybersquatting claim, the Court finds the allegations and claim could have been discovered—and thereby plead—at an earlier stage. Because the trademark infringement allegations and cybersquatting claim are the products of "undue delay," the Court denies Plaintiffs leave to add the allegations and claim.

## C. MOTION FOR ORDER TO SHOW CAUSE

Plaintiffs' third motion for an order to show cause as to why Defendant should not be held in contempt alleges that Defendant continues to unlawfully use Plaintiffs' trademarks and trademarked a phrase, "The Next Generation of Beak and Fulcrum Instruments," that it was prohibited by using. The Court will deny Plaintiffs' request for a default judgment at this time. Further, to the extent that Plaintiffs' second motion for contempt remains pending, *see* Dkt. # 93, the Court likewise denies that motion.

## V. CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion to Vacate or Alternatively to Modify the Preliminary Injunction [dkt 108] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Motion for Leave to File Second Amended Complaint [dkt 119] is GRANTED in part and DENIED in part.  Plaintiffs are permitted leave to amend their complaint to add proposed Count V, Cancellation of U.S. Registration No. 4,301,312.  To the extent that Plaintiffs desire to add additional allegations of trademark infringement or a cybersquatting claim, such requests are denied.

IT IS FURTHER ORDERED that Plaintiffs' Third Motion for Order to Show Cause Why Defendant Should Not be Held in Contempt [dkt 120] is DENIED.

IT IS FURTHER ORDERED that Plaintiffs' Ex Parte Motion for Leave to File a Sur-Reply to Defendant's Motion to Dissolve or Modify the Preliminary Injunction [dkt 127] is DENIED as moot.

IT IS SO ORDERED.

Date:  March 6, 2014                                                      s/Lawrence P. Zatkoff
                                                                                         Hon. Lawrence P. Zatkoff
                                                                                         U.S. District Judge