## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

END PRODUCT RESULTS, LLC, a Michigan
Limited Liability Company, d/b/a Golden Dental
Solutions, and BEAK & BUMPER, LLC, a
Michigan Limited Liability Company,                        Case No. 12-11546
                                                          Hon. Lawrence P. Zatkoff

        Plaintiffs,

v.

DENTAL USA, INC., an Illinois Corporation,

        Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on September 30, 2014

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment [dkt 134]

and Defendant's "Motion to Strike and Have Facts Deemed Undisputed" [dkt 143]. The motions

have been fully briefed. The Court finds that the facts and legal arguments are adequately

presented in the parties' papers such that the decision process would not be significantly aided by

oral argument. Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the

motions be resolved on the briefs submitted. For the following reasons, both of Defendant's

motions are DENIED.

## II. BACKGROUND

**A.    Factual Background**

Plaintiffs End Product Results, d/b/a Golden Dental Solutions ("End Products"), and Beak & Bumper, LLC filed this action on April 5, 2012, seeking relief under the Lanham Act and Michigan common law for Defendant's alleged intentional trademark infringement. Plaintiffs have sold and continue to sell a two-handed dental instrument (similar to a pair of pliers) used by a dentist to extract teeth under the registered trademark "Physics Forceps." Plaintiffs also market the procedure used to extract teeth with the instrument under the "Beak & Bumper" registered trademark.  Plaintiffs have used the "Physics Forceps" and the "Beak & Bumper" marks ("the Registered Marks") in commerce since 2007 and 2010, respectively.

In 2009, Plaintiffs and Defendant had a disagreement regarding Defendant's manufacture of dental instruments for Plaintiffs.  As a result, the parties entered into the 2009 Settlement Agreement.  The 2009 Settlement Agreement contained several provisions and obligations of each party, some of which are currently being disputed before the American Arbitration Association. The pertinent provisions of the 2009 Settlement Agreement are:

> 1.    [End Products] shall return and [Defendant] shall accept approximately    250 sets (3 pliers per set) immediately after execution of the agreement;
>
> 2.    [Defendant] agrees to manufacture or have manufactured 500 sets (4 pliers per set) of dental pliers in accordance with specifications provided by [End Products] and meeting quality standards dictated by [End Products];
>
> * * * * * *
>
> 4.    [Defendant] shall have the right to sell [End Products'] pliers [the Physics Forceps] solely in the United States only upon terms mutually agreeable to [Defendant] and [End Products] *provided, however,* that **all such sales shall be placed through and fulfilled by [End Products].**"

2

(emphasis added).  End Products returned the 250 sets of 3 pliers to Defendant, as called for under the 2009 Settlement Agreement.  Defendant also manufactured 500 sets of 4 pliers, but End Products did not accept them because they did not meet End Products' quality standard.  As discussed below, some of the returned sets of three pliers were sold by Defendant to one of its former distributors, Randall Pardy ("Pardy").  Pardy, in turn, sold those sets of three pliers to independent dentists.  Likewise, there is evidence that some of the sets of four pliers that were not accepted by End Products were sold by Defendant to another of its distributors, Diamond/Misch.

Plaintiffs allege that Defendant is now selling a competing dental instrument identified as the Misch Power Elevators (the "Power Elevators").  According to Plaintiffs, Defendant used the trademark "Physics Forceps" to pass off its Power Elevators as Plaintiffs' instrument.  Plaintiffs further allege that Defendant listed "Physics Forceps" as a product on its website, used the similar phrase "Beak & Fulcrum" on its website to confuse customers that Defendant's instrument is related to Plaintiffs' "Beak & Bump" procedure, displayed brochures of Plaintiffs' "Physics Forceps" instrument next to Defendant's Power Elevators at trade shows, and displayed Plaintiffs' actual instrument bearing the "Physics Forceps" mark on Power Elevators brochures at Defendant's trade show booths.

Plaintiffs assert four claims against Defendant: (1) Count I -- trademark infringement under § 32(1) of the Lanham Act, 15 U.S.C. § 1114(1); (2) Count II -- false designations of origin under § 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A); (3) Count III -- common law trademark infringement; and (4) Count IV -- common law unfair competition.

**B.      Procedural Background**

In the early stages of this litigation, Plaintiffs filed a motion for a preliminary injunction seeking to enjoin Defendant from further use of the Registered Marks and Defendant's similar "Beak & Fulcrum" mark during the pendency of this matter.  On June 5, 2012, the Court granted Plaintiffs' preliminary injunction motion after finding that Defendant's use of Plaintiffs' "Physics Forceps" mark and the "Beak & Fulcrum" mark (similar to Plaintiffs' "Beak & Bumper" mark) was likely to cause consumer confusion.   The Preliminary Injunction stated that Defendant is:

>           (1) enjoined and restrained, including its officers, agents, servants, employees, attorneys, successors and assigns, and all persons or entities acting in concert or participation with them, from using (a) the trademarks "Physic Forceps" and "Beak & Bumper" and (b) any other false designation of origin or representation likely to cause confusion in the mind of a consumer or to deceive the public into believing that Defendant or its products are related to Plaintiffs or their products; and
>
>           (2) required to file with the Court and serve on Plaintiffs' counsel, within thirty (30) days after entry of this Opinion and Order, a sworn written statement under oath setting forth in detail the manner and form in which Defendant has complied with this Opinion and Order as provided in 15 U.S.C. § 1116(a).

Based on Defendant's alleged non-compliance with the Preliminary Injunction, Plaintiffs filed a motion for an order compelling Defendant to show cause why Defendant should not be held in contempt of Court.   In their motion, Plaintiffs presented evidence that Defendant continued to display and advertise with language that violated the Preliminary Injunction, specifically directing the Court's attention to Defendant's use of the phrase "The Next Generation of Beak And Fulcrum Instruments."  Finding that this phrase was "already precluded from use at the time the Preliminary Injunction went into effect," on August 29, 2012, the Court

found Defendant in contempt for failing to comply with the Preliminary Injunction and ordered

Defendant to, among other things:

> (1) immediately remove and stop use of "Beak & Fulcrum", and
> the phrase "The Next Generation of Beak And Fulcrum
> Instruments" (or any derivative of it) from all of Defendant's
> advertisements, promotional and/or marketing, and materials
> (including those in electronic form); and

> (2) issue a written letter to its distributors and/or salesmen
> instructing them not to advertise the Misch Power Elevators as
> "The Next Generation of Beak And Fulcrum Instruments" and/or
> use Plaintiffs' trademarks in any advertising.

On March 12, 2013, the USTPO registered a trademark for "The Next Generation of Beak and

Fulcrum Instruments" to Defendant.  Defendant never made the USTPO aware of the Court's

issuance of the June 5, 2012, Opinion and Order granting Plaintiffs a preliminary injunction

against Defendant or the Court's August 29, 2012, Opinion and Order barring Defendant from

using the phrase "The Next Generation of Beak and Fulcrum Instruments."

### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain

language of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to

make a showing sufficient to establish the existence of an element essential to that party's case,

and on which that party will bear the burden of proof at trial.").  A party must support its

assertions by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information,
> affidavits or declarations, stipulations (including those made for
> purposes of the motion only), admissions, interrogatory answers,
> or other materials; or

> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider

other materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.

*Celotex*, 477 U.S. at 323.   The moving party discharges its burden by "'showing'–that is,

pointing out to the district court–that there is an absence of evidence to support the nonmoving

party's case." *Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at

325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving

party, who "must do more than simply show that there is some metaphysical doubt as to the

material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

"[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position

will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which

the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 252 (1986).

## IV. ANALYSIS

### A.      Motion to Strike and Have Facts Deemed Undisputed

The brief in support of Defendant's Motion for Summary Judgment was 25 pages, *i.e.*,

the maximum number of pages allowed by the Eastern District of Michigan Local Rules.  In this

Court, a party must set forth its version of the facts that support or contradict a dispositive

motion in its supporting brief—as Plaintiffs did when filing their response brief—and the facts

must be included within the supporting brief (*i.e.*, within the 25-page limit). Defendant did not, however, set forth facts in its brief in support of its Motion for Summary Judgment. Instead, in conjunction with its Motion for Summary Judgment, Defendant filed a "Statement of Undisputed Facts in Support of its Motion for Summary Judgment" (hereinafter, "the Statement"). The Court did not authorize or request the filing of a Statement of Undisputed Facts in conjunction with a dispositive motion in this case. The Statement was 14 pages. Plaintiff filed a 14-page response to the Statement, wherein Plaintiff admitted some of the "undisputed" facts, denied some of the "undisputed" facts, and admitted in part and denied in part some of the "undisputed" facts. In other words, contrary to Defendant's representation, many of the facts in the Statement are not undisputed after all.

Defendant now seeks to strike Plaintiff's response to the Statement and to have the facts in the Statement deemed undisputed. The Court finds no basis for granting Defendant's motion. First, Defendant has offered no authority that requires this Court to consider a Statement of Undisputed Facts—or accept the "facts" set forth therein as undisputed. Second, if the Court had authorized or requested such a statement, the Court would have required the parties to submit a stipulated statement of facts—not one that contained facts in dispute. Third, in essence, the Statement contains Defendant's version of what it thinks the facts of this case are, and Plaintiff responded by indicating whether it agreed with those facts or not and, in some instances, set forth the reasons Plaintiff did not agree with the "undisputed facts" listed by Defendant. The Court shall therefore treat the Statement (and Plaintiff's response to the Statement) to be what they are—competing statements of facts.

For the reasons set forth above, the Court finds no basis for striking Plaintiff's response to the Statement. Accordingly, Defendant's Motion to Strike and Have Facts Deemed Undisputed is denied.

**B.     Motion for Summary Judgment**

*1. Applicable Law*

In Count I, Plaintiff brings a claim for trademark infringement under Section 32(1) of the Lanham Act, 35 U.S.C. § 1114(1), which states, in part:

(1)     Any person who shall, without the consent of the registrant –

(a)     use in commerce any reproduction, counterfeit, copy or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or

(b)     reproduce, counterfeit, copy or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies hereinafter provided. Under subsection (b) hereof, the registrant shall not be entitled to recover profits or damages unless the acts have been committed with knowledge that such imitation is intended to be used to cause confusion, or to cause mistake, or to deceive.

In Count II, Plaintiff brings a claim for false designation under Section 43(a)(1)(A) of the Lanham Act, 35 U.S.C. § 1125(a)(1)(A), which states, in part:

(1)     Any person who on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading misrepresentation of fact , which --

(A)     is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods,

> services, or commercial activities by another person . . . shall be liable in a
> civil action by any person who believes that he or she is likely to be
> damaged by such act.

To succeed on the Lanham Act claims, Plaintiffs must first show that Defendant either (a) used in commerce a reproduction, counterfeit, copy or colorable imitation of a registered mark or applied the same to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce; or (b) used in commerce any mark that is likely to cause confusion or mistake as to the affiliation, connection, or association with the Plaintiffs, and that such actions by Defendant are likely to deceive the purchasing public. If Plaintiffs can show that Defendant used the accused mark in commerce, Plaintiffs then must show that there is a likelihood of confusion between the accused mark and their protectable mark. *Daddy's Junky Music v. Big Daddy's Family Music*, 109 F.3d 275, 280 (6th Cir. 1997) ("The touchstone of liability under [the Lanham Act] is whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties.").

> Whether a likelihood of confusion exists is evaluated under the eight *Frisch* factors:
> (1) the strength of the plaintiff's mark, (2) relatedness of the goods or services, (3)
> similarity of the marks, (4) evidence of actual confusion, (5) marketing channels
> used, (6) likely degree of purchaser care, (7) the defendant's intent in selecting its
> mark, and (8) likely expansion of the product lines.

*Gibson Guitar Corp. v. Paul Reed Smith Guitars, LP*, 423 F.3d 539, 548 (6th Cir. 2005) (citing *Frisch's Rests. Inc. v. Elby's Big Boy of Stuebenville, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982), *cert denied*, 459 U.S. 916 (1982)). *See also Wynn Oil Co. v. Thomas,* 839 F.2d 1183, 1186 (6th Cir. 1988). "The ultimate question remains whether relevant consumers are likely to believe that the products or services offered by the parties are affiliated in some way." *Therma-Scan, Inc. v. Thermoscan, Inc.,* 295 F.3d 623, 630 (6th Cir. 2002). A trademark user is not, however, allowed to prevent the use of a generic term by a competitor. *See Abercrombie & Fitch Stores, Inc. v. Am.*

*Eagle Outfitters, Inc.*, 280 F.3d 619, 638 (6th Cir. 2002) ("no matter how much money and effort the user of a generic term has poured into promoting the sale of its merchandise and what success it has achieved in securing public identification, it cannot deprive competing manufacturers of the product of the right to call an article by its name.") (*citing Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir. 1976)).

The state law claims for common law trademark infringement and common law unfair competition in Counts III and IV, respectively, are subject to essentially the same law and analysis as the Lanham Act claims. *See, e.g., Homeowners Group, Inc. v. Home Marketing Specialists, Inc.*, 931 F.2d 1100, 1104-1105, n.1 (6th Cir. 1991); *Two Men and a Truck/Int'l, Inc. v. Two Men and a Truck/Kalamazoo, Inc.*, 949 F.Supp. 500, 503 (W.D.Mich.1996) ("The analysis of a claim under Michigan's law of unfair competition is similar to the analysis of a federal Lanham Act claim.")

    2. *Counts I and II*

        a. <u>Evidence Marks Were Used in Commerce</u>

Defendant argues that there is no genuine issue of material fact: (a) regarding sales of the rejected goods under the 2009 Settlement Agreement, and (b) that there is no confusion between the trademark "The Next Generation of Beak and Fulcrum Instruments" and the trademark "Beak & Bumper." Defendant further argues that it is entitled to summary judgment on Counts I and II with regard to the phrase "The Next Generation of Beak and Fulcrum Instruments" because Plaintiffs cannot prevent the use of generic terms for the type of instruments that includes Defendant's Power Elevators.

Defendant first contends that the 2009 Settlement Agreement specifically allows Defendant to sell Plaintiffs' Physics Forceps pliers and an inherent license for Defendant to

advertise, offer to sell, and sell genuine Physics Forceps.  Defendant contends that because it had permission to sell the Physics Forceps, trademark law specifically permitted Defendant to use of the mark associated with the product. *See e.g., Bandag, Inc. v. Al Boler's Tire Stores, Inc.*, 750 F.2d (Fed. Cir. 1984).  Further, Defendant states that Plaintiffs do not dispute: (1) Defendant was authorized to sell authentic Physics Forceps, (2) Defendant could sell competing products, and (3) the "fake" products were not labeled with any of Plaintiffs' trademarks.

Even though Defendant's admits that it "was obligated to sell the dental pliers according to the terms of the agreement," Defendant's argument ignores the language of the 2009 Settlement Agreement that "**all sales shall be placed through and fulfilled by [End Products]**" (emphasis added).    Therefore, Defendant's argument that Plaintiffs specifically granted Defendant permission to advertise and sell the Physics Forceps pliers on Defendant's website is meaningless <u>unless</u> Defendant always complied with the terms of the 2009 Settlement Agreement when doing so.  Plaintiff has produced evidence that Defendant did not do so.  As discussed below, Plaintiffs have submitted evidence that: (a) Defendant used the "Physics Forceps" trademark to sell Defendant's products, and (b) sold the rejected goods as "Physics Forceps" to a distributor and consumers.  Moreover, there is no evidence in the record that Defendant placed any of the sales of the rejected dental pliers or any Physics Forceps through Plaintiffs (specifically, End Products) or that the sales of those rejected dental pliers or any Physics Forceps were fulfilled by Plaintiffs (specifically, End Products).

Defendant argues that "Plaintiffs can produce no evidence of even a single sale of anything other than: (a) genuine Physics Forceps as authorized under the 2009 Settlement Agreement; or (b) competing products that do not reference Plaintiffs' Physics Forceps." Plaintiffs dispute Defendant's argument by offering evidence that Defendant sold rejected 3-

plier sets to Pardy, rejected 4-plier sets to Diamond/Misch, and sets of rejected pliers to consumers at trade shows. For example, as Pardy testified at his deposition,[1] he purchased sets of three Physics Forceps from Defendant, and the only "sets" of three in existence at that time were the instruments Plaintiffs returned to Defendant under the 2009 Settlement Agreement. Notably, Plaintiffs never sold 3-plier sets. Pardy testified that Defendant represented them as genuine Physics Forceps when Defendant sold the sets to him ("that [Defendant] had in inventory, . . . sets of three physics forceps that were not purchased by [Plaintiffs]"), and Pardy believed the instruments were genuine Physics Forceps:

> Q:   Could you refer to those as counterfeits?
> A:   No, not at all.
> Q:   No?
> A:   No, not at all.
> Q:   Not fake physics forceps?
> A:   No, not at all.
> Q:   Okay.   Were there other beak and fulcrum, beak and bumper instruments that were on the market at this time?
> A:   No, there weren't.
> Q:   Just the physics forceps?
> A:   Correct.
> Q:   Okay.
> A:   Which I believe these were.
> Q:   You believe they were physics forceps?
> A:   Yeah.

Pardy further stated: "I honestly didn't believe they were counterfeit.  Counterfeit would be something that somebody knocked off. These were made for [Plaintiffs], and [Plaintiffs] didn't accept them. They were made by order from [Plaintiffs]."

Defendant contends that the term "physics forceps" was used in a generic manner to refer to beak and fulcrum instruments and that Pardy "obviously [wa]s not using the mark to refer to

---

[1] Pardy also testified at his deposition that Defendant sold approximately 10 sets of the rejected 4-plier sets to another distributor, Diamond/Misch, and there is no evidence that such sales were placed through and fulfilled by End Products.

Plaintiffs as the source of the goods (*i.e.*, as a trademark) because he specifically states that he knew the goods were not coming from [Plaintiff]." As Pardy testified, however, (1) there were no other physics forceps on the market at the time, and (2) he believed he was purchasing "physics forceps."[2] As such, Pardy's testimony, at a minimum, allows for the interpretation that Pardy believed he was buying instruments that were Physics Forceps. The fact that Pardy subsequently sold the instruments he purchased from Defendant to consumers as Physics Forceps supports that interpretation.

Defendant contends that the actions of Pardy—and the effect on end users—are irrelevant because Pardy did not act on behalf of Defendant. Although it is true that there is no evidence that Pardy acted on behalf of Defendant, the fact is that Pardy did purchase the sets of three physics forceps from Defendant, with the understanding that they were Physics Forceps that Plaintiffs had rejected. Further, Pardy subsequently sold them as "Physics Forceps" sets. As such, Pardy's testimony and actions constitute evidence that Defendant sold the instruments to him as Physics Forceps—and there is no evidence that such sales were placed through and/or fulfilled by Plaintiffs. Defendant further asserts that nothing Pardy has stated indicates that Defendant was selling "fake/counterfeit/unauthorized Physics Forceps." Although true, the Court notes that Pardy testified that he bought three-piece physics forceps sets from Defendant – and that he knew and/or understood the sets to be physics forceps sets originally manufactured for End Products – and then sold such physic forceps to customers as "Physic Forceps." The Court also notes that there is no evidence that such sales were authorized by Plaintiffs.

Defendant also contends it did not use the Registered Marks (namely, Physics Forceps) in connection with the sale of the rejected goods and, as such, Plaintiff cannot show that

---

[2] In the Pardy transcript, there is no distinction between "physics forceps" as a generic term and "Physics Forceps" as a trademarked name for Plaintiffs' products; all references to "physics forceps" are in lower case and have no trademark registration (®) associated with the term.

Defendant used Plaintiffs' marks or any confusingly similar mark in commerce or that Defendant used any mark in commerce to imply an affiliation, connection or association with the rejected goods with Plaintiffs or the Physics Forceps.  Evidence on the record allows for a different interpretation.

For example, evidence has been produced that customers utilizing Defendant's website could not actually purchase the Physics Forceps on that website.  Instead, there is evidence that Defendant's website homepage listed a category titled "products," and when a customer clicked on "products," a drop down list of the products sold by Defendant appeared. One of the products was "forceps," and if the customer clicked on "forceps" the term "Physics Forceps" (among others) appeared.  The Physics Forceps product, however, was not associated with any of the products actually offered for sale.  Likewise, if one visited Defendant's website and clicked on the advertisement for the "[End Products] Physics Forceps® Set," the viewer was directed to a page to purchase the competing product (the Power Elevators), not the Physics Forceps. In summary, the evidence could be interpreted as showing that the Physics Forceps product and trademark name Physics Forceps were listed on Defendant's website simply to lure buyers to purchase the Power Elevators, *i.e.,* competing instruments.

Moreover, Plaintiffs have submitted evidence that Defendant was using the Physics Forceps Mark at trade shows to promote the Power Elevators.  For example, Defendant displayed the Physics Forceps brochure on its display table, but the product(s) on top of the Physics Forceps brochure were the Power Elevators, not the Physics Forceps.  Defendant denies that ever occurred, but on Defendant's motion for summary judgment, all inferences must be construed in a light most favorable to Plaintiffs.

14

For the reasons set forth above, the Court finds that, at a minimum, there is a genuine issue of material fact whether Defendant: (a) used in commerce a reproduction, counterfeit, copy or colorable imitation of a registered mark or applied the same to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce; and (b) used in commerce a mark that is likely to cause confusion or mistake as to the affiliation, connection, or association with the Plaintiffs, and that such actions by Defendant are likely to deceive the purchasing public.

b.  Evidence of Likelihood of Confusion

As the Court has concluded that there is evidence that Defendant used the Physics Forceps mark in commerce in violation of the Lanham Act, the Court turns to whether there is any evidence of a likelihood of confusion as a result of Defendant's conduct, including whether there is any likelihood of confusion between the marks "The Next Generation of Beak and Fulcrum Instruments" and "Physics Forceps" and/or "Beak & Bumper."

Defendant argues "Beak & Bumper" is a generic term and that "The Next Generation of Beak and Fulcrum Instruments" clearly and unequivocally denotes that Defendant's product is "the next generation of" beak and fulcrum instruments (which indisputably have been around for centuries), not the next generation of the Physics Forceps.  Defendant also argues that its use of the phrase "The Next Generation of Beak and Fulcrum Instruments" cannot be confused with Plaintiffs' "Beak & Bumper" trademark "because the parties predominant house marks negate any confusion and because Plaintiffs' mark is generic."   The testimony and correspondence of several dentists constitutes evidence that: (1) Defendant's interpretation that its product is "the next generation of" beak and fulcrum instruments is not necessarily the only interpretation of Defendant's mark, (2) Plaintiff's "Beak & Bumper" mark is not generic, and

15

(3) the use of "The Next Generation of Beak and Fulcrum Instruments" may not only cause a likelihood of confusion but it may also cause actual confusion.

Defendant's argument first ignores the testimony of Dr. Carl Misch, whose company was a distributor of Defendant's brand of physics forceps (the Power Elevators). Dr. Misch also used the phrase "The Next Generation of Beak and Fulcrum Instruments" to advertise the Power Elevators. Dr. Misch testified that, as a dentist, the advertising of "The Next Generation of Beak and Fulcrum Instruments" led him to believe that the product referenced was the next generation of Plaintiffs' Physics Forceps, not Defendant's Power Elevators:

> Q    Do you know what the term next generation refers to?
> A:    Yeah, something that's new, improved.  When you hear the term next
>       generation, you think new and improved.
> Q:    From a prior generation?
> A:    From a prior.
> Q:    Do you know what prior generation is being referred to?
> A:    Here I would guess it would be Physics Forceps.
> Q:    That's how you would read that term?
> A:    That's how I would interpret it, yes.

Defendant's argument also ignores evidence of actual confusion that has been produced. Specifically, in or about June 2012, Dr. Scott Trettenero emailed Plaintiffs that he was confused by advertising of "a 2nd generation product [of forceps] that was new and improved." Dr. Trettenero had initially contacted Plaintiffs to return a set of Plaintiffs' Physics Forceps to Plaintiffs because Dr. Trettenero believed (erroneously) that Plaintiffs had a new model of Physics Forceps on the market:

> Hi Curt,
>
> I am writing you this e-mail because of a misunderstanding I had with Dr.
> Carl Misch's endorsement of a new forceps he is marketing. I thought that
> because he had endorsed the Physics Forceps originally, his new
> endorsement was for a 2nd generation product that was new and improved.

16

> That is why I contacted your company to return the set of posterior instruments I had just recently purchased[.]

Likewise, on June 20, 2012, Dr. Robert Underill visited Plaintiffs' interactive website that allows Plaintiffs to converse with customers shopping for Physics Forceps. During an online discussion, Dr. Underill stated that he saw an advertisement for a "new design of your [Plaintiffs'] forceps." At the time, Plaintiffs did not have a new design of the Physics Forceps, and the only "new design" of forceps instruments was the Power Elevators—the instruments that Defendant were advertising as "The Next Generation of Beak & Fulcrum Instruments."

Defendant also contends that advertising its Power Elevators as "The Next Generation of Beak & Fulcrum Instruments" does not amount to infringement because the terms are generic and there can be no confusion. Several things on the record allow for a different interpretation. First, Defendant itself registered the phrase "The Next Generation of Beak and Fulcrum Instruments" with the USPTO, an act that could demonstrate that Defendant does not believe it to be generic. Second, Defendant ignores the testimony of Dr. Misch that advertising using the phrase "The Next Generation of Beak and Fulcrum Instruments" led him to believe the product referenced would be Plaintiffs' Physics Forceps. Third, it also ignores Dr. Misch's testimony that the Beak & Bumper mark is unique, *i.e.*, non-generic, as the "Beak & Bumper" phrase uses non-dental terms to describe the underlying procedure. Specifically, Dr. Misch testified:

> The term bumper we don't use in dentistry. I wouldn't know what a bumper is. You know, that was a term [Plaintiff's originator] had. He called it I think a beak and bumper. A bumper wouldn't make sense to a dentist. They wouldn't know what a bumper is.

> * * * * *

17

I'm just telling you if I went to a dentist and said hand me your bumper, they'd have no idea what I'm talking about.

\* \* \* \* \*

You ask a dentist what a beak is, they don't know. You ask a dentist what a bumper is, or a beak and bumper, they would have no idea what it means. So, if he wants to trademark it, great, it would make the product very unique, giving it a term like . . . You know, beak and bumper doesn't make any sense to a dentist. It would make sense to me, if you want to trademark that, great, you've got something unique.

Fourth, as noted above, the evidence shows that some dentists (*e.g.*, Trettenero and Underill) have been confused by what products constitute "The Next Generation of Beak and Fulcrum Instruments."

Defendant also argues that the USPTO determined that there was no likelihood of confusion when the USPTO granted Defendant's application for the mark "The Next Generation of Beak and Fulcrum Instruments." Defendant contends that, "[a]bsent a compelling reason to disagree with the PTO, the governing body with particular expertise in making these types of evaluations, the Court should defer its judgment in determining that there is no likelihood of confusion between the marks." *Citing Wynn Oil Co. v. Thomas*, 839 F.2d 1183 (6th Cir. 1988). Defendant's argument fails. In this case, the Court has two compelling reasons to disagree with the USPTO—though the problem is not necessarily with the USPTO's analysis; rather, the problem continues to be Defendant's choice to thumb its nose at the Court's orders.

First, Defendant's application to the USPTO did not advise the USPTO that this Court entered a preliminary injunction on June 5, 2012, that barred Defendant from "any other false designation of origin or representation likely to cause confusion in the mind of a consumer or to deceive the public into believing that Defendant or its products are related to Plaintiffs or their products." Second, and more egregiously, Defendant never advised the USPTO that, on August

29, 2012, this Court found Defendant in contempt for failing to comply with the preliminary injunction and ordered Defendant to:

(1) immediately remove and stop use of "Beak & Fulcrum", and the phrase "The Next Generation of Beak And Fulcrum Instruments" (or any derivative of it) from all of Defendant's advertisements, promotional and/or marketing, and materials (including those in electronic form); and

(2) issue a written letter to its distributors and/or salesmen instructing them not to advertise the Misch Power Elevators as "The Next Generation of Beak And Fulcrum Instruments" and/or use Plaintiffs' trademarks in any advertising.

Defendant failed to so advise the USTPO even though the Court made those findings and made its rulings in Opinion and Orders issued more than six months before the USPTO granted Defendant the trademark registration.

Defendant also asserts that, even if an analysis of the likelihood of confusion is necessary, the analysis of the eight *Frisch* factors weighs in Defendant's favor.  For the following reasons, the Court finds Defendant's contention is not supportable as a matter of law, *i.e.*, there is sufficient evidence to support a finding that there is a likelihood of confusion.

## 1. <u>Strength of Plaintiff's Mark</u>

Defendant argues the USPTO originally rejected Plaintiffs' "Beak & Bumper" mark because beak was a well-known generic term in the dental community.  The fact is, however, that the USPTO ultimately granted Plaintiffs the "Beak & Bumper" mark.  Defendant also ignores its own argument that the phrase "The Next Generation of Beak and Fulcrum Instruments" is also generic—yet, Defendant also was able to obtain a trademark for that phrase.

Defendant next contends "Beak & Bumper" is a weak mark because: (a) it is descriptive of the products Plaintiffs sell, and (b) it resembles the generic name for the instruments they sell (because "beak" means beak, which is defined in at least one dictionary as "a pair of dental pincers used in shaping prostheses," and "bumper" refers to the fulcrum end of the instrument,

and Defendant contends "bumper" is synonymous with "fulcrum").  Defendant's contention that the "Beak & Bumper" mark is weak or has not acquired secondary meaning is not beyond dispute; rather, there is substantive evidence to the contrary.  According to Dr. Misch, the Beak & Bumper mark constitutes a unique, non-dental term associated with the Physics Forceps.  In addition, as the Court has noted, Plaintiffs' product has appeared on The Doctors TV Show, was the only product of its kind on the market at one time, and is endorsed by several well-known physicians.  As such, there is evidence that the Beak & Bumper Mark is strong. *Daddy's Junky Music Stores,* 109 F.3d at 280 ("A mark is strong and distinctive when 'the public readily accepts it as the hallmark of a particular source.'").

## 2.  Relatedness of the Goods or Services

There is no dispute that the goods and services at issue in this case are similar and closely related.  Moreover, as previously found by this Court, "both parties appear to sell and market competing dental instruments used to extract teeth."  As such, at a minimum, this factor cannot be said to favor Defendant.

## 3.  Similarity of the Marks

Defendants' use of "The Next Generation of Beak & Fulcrum Instruments" may be deemed similar to the Beak & Bumper mark and the Physics Forceps mark.  As this Court has previously found, "Beak & Fulcrum," when used with "The Next Generation of . . ." could "cause a likelihood of consumer confusion with Plaintiffs' 'Physics Forceps' and the 'Beak & Bumper' procedure."  As set forth above, the testimony and/or communications of Dr. Misch, Dr. Trettenero and Dr. Underill constitute evidence that supports a finding that the marks are similar.

## 4.  Evidence of Actual Confusion

20

As discussed above, there is evidence that Dr. Trettenero and Dr. Underill were confused by this advertising.

### 5.  **Marketing Channels Used**

There is evidence that Defendant and Plaintiffs attend the same trade shows and that they use their respective websites to advertise their products.  On this basis, the Court cannot find that this factor weighs heavily in favor of Defendant.

### 6.  **Likely Degree of Purchaser Care**

There is evidence that the purchasers are educated and sophisticated buyers who are likely making a purchase of instruments that will last most, if not all, of their dentistry careers.   There is also evidence that, as the Court has previously stated and as demonstrated by the testimony of Dr. Misch and the communications of Dr. Trettenero and Dr. Underill, even "a sophisticated buyer has no means to discern whether the instrument is being purchased from Defendant or Plaintiffs, thus contributing to a likelihood of confusion."

### 7.  **Defendant's Intent in Selecting its Mark**

The Court is not aware of any direct evidence that Defendant intentionally infringed on Plaintiffs' Registered Marks.   As the Court has stated previously, however, "[c]ircumstantial evidence of copying, particularly 'the use of a contested mark with knowledge of the protected mark at issue,' is sufficient to support an inference of intentional infringement where direct evidence is not available."   In this case, there is evidence of several events that have occurred from which intent could be inferred: (1) Defendant continued to advertise the term "Beak & Fulcrum" after it was ordered by the Court to refrain from using it, (2) Defendant began using the phrase

"The Next Generation of Beak and Fulcrum Instruments" after the preliminary injunction was issued, (3) Defendant did not inform the USPTO of any of the Court's rulings before obtaining the mark for the phrase "The Next Generation of Beak and Fulcrum Instruments," (4) Defendant advertised Physics Forceps on its website but customers were not able to purchase them, and (5) Physics Forceps were placed on top of Power Elevators' brochures at Defendant's trade show booth. Therefore, this factor does not weigh heavily in Defendant's favor.

## 8. <u>Likely Expansion of Product Lines</u>

Since the filing of their complaint, Plaintiffs have introduced a new version of the Physics Forceps. Thus, it is possible that the mark "The Next Generation of Beak and Fulcrum Instruments" could cause further confusion as Plaintiffs' new product is marketed and sold.

## <u>Conclusion</u>

Based on a weighing of the eight *Frisch* factors, the Court finds that Defendant has not met its burden of demonstrating that consumer confusion is unlikely to be caused by: (a) Defendant's use of "The Next Generation of Beak and Fulcrum Instruments," and (b) Defendant's sale and/or advertisement of Physics Forceps and the three and four set pliers that were rejected by End Products, about which there remains a genuine dispute of material fact, as discussed above.

### c. <u>Conclusion</u>

For the reasons stated above, the Court finds that there is a genuine dispute of material fact regarding Plaintiffs' Lanham Act claims in Counts I and II. Therefore, the Court denies Defendant's Motion for Summary Judgment with respect to Counts I and II.

3. *State Law Claims*

As pled by Plaintiffs in each complaint they filed, this Court has diversity jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332; as such, the Court cannot dismiss Plaintiffs' state law claims by declining to exercise supplemental jurisdiction over them.   In addition, as the analysis regarding the viability of Plaintiffs' state law claims for trademark infringement and unfair competition is the same as for the Lanham Act claims, Defendant's Motion for Summary Judgment is denied with respect to Plaintiffs' state law claims in Counts III and IV.

## V.  CONCLUSION

Accordingly, for the reasons stated above, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [dkt 134] is DENIED.   IT IS FURTHER ORDERED that Defendant's "Motion to Strike and Have Facts Deemed Undisputed" [dkt 143] is DENIED because many of the facts set forth in the Statement are in dispute.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
Hon. Lawrence P. Zatkoff
United States District Judge

Dated:  September 30, 2014

23